```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

  ELLIOT M. HIRSCH,

                    Plaintiff,               MEMORANDUM & ORDER
                                             22-cv-5011(EK)(VMS)

            -against-

  LAURIE BEDA, et. al,

                    Defendants.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

   Plaintiff Elliot Hirsch has sued twenty-eight defendants in connection with events surrounding his divorce from his now ex-wife, Elizabeth Kairey.  He invokes this Court's jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.  Hirsch pleads only two federal claims (civil RICO and RICO conspiracy).

   For the reasons stated below, those claims must be dismissed under Federal Rule of Civil Procedure 12(b)(6).

   This leaves the state claims.  Though Hirsch invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332, he has not sufficiently alleged complete diversity.  As set out below, Hirsch is therefore ordered to show cause why the Court should not dismiss his remaining state-law claims on jurisdictional grounds.

**I.  Background**

The following facts are taken from the operative complaint.[1]  Elliot Hirsch was married to Elizabeth Kairey; both were members of the same Orthodox Jewish community.  Fifth Amended Compl. ("Compl.") ¶¶ 1, 2, ECF 168.  In Hirsch and Kairey's faith, one prerequisite to divorce is a "Get" — a religious divorce document provided by the husband to the wife.  *Id.* ¶¶ 1, 297.  Hirsch initially refusal to give Kairey a Get, but eventually relented.  *Id.* ¶ 1.  He now claims there was an "intentional, pre-planned, malicious, extortion conspiracy against [him] formed for purposes of extracting a Get from [him] to give to Elizabeth Kairey."  *Id.* ¶ 1.

Proceeding *pro se*, Hirsch brings ten causes of action, all related to the alleged extortion.[2]  Eight of his claims are state-law tort claims — for intentional infliction of emotional distress, defamation, false light, civil conspiracy, negligent infliction of emotional distress, private nuisance, negligence, and civil assault.  Two are federal claims — a civil RICO claim and a RICO conspiracy claim.

---

[1] Hirsch labels the instant complaint the "First Amended Complaint," but this is not accurate.  He has filed six complaints in the instant action, five of which have been dismissed or amended for various reasons.  See ECF Nos. 1, 4, 6, 24, 42, 168.

[2] Though Hirsch is proceeding *pro se*, he has passed the New Jersey bar examination and (as far as the record reveals) is pending admission there.  While "a court is ordinarily obligated to afford a special solicitude to *pro se* litigants . . . a lawyer representing himself ordinarily receives no such solicitude at all."  *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010); *United States v. Pierce*, 649 F. App'x 117, 117 n.1 (2d Cir. 2016) (disbarred lawyers also receive no special solicitude).

The appearing defendants have moved jointly to dismiss the case. *See* Appearing Defendants' Motion to Dismiss ("Mot."), ECF No. 174-11; ECF Nos. 175, 176, 177, 178, 179 (each noting ECF No. 174 is "is a joint [motion] by all appearing defendants").[3]

## II. Discussion

### A. Federal Claims

Hirsch brings two federal claims, for civil RICO and RICO conspiracy. Compl. ¶¶ 270-97. The defendants moved to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Mot. at 2, 4-6, 39-51. Though there are many issues with Hirsch's RICO claims, one is particularly salient: Hirsch fails to allege a pattern of racketeering activity. This shortcoming is fatal to his claims.

1. Standard of Review

---

[3] Though the most recent Amended Complaint was in 2023, several defendants have not yet been served. *See, e.g.*, ECF Nos. 180, 203, 205. And other defendants have failed to timely answer the complaint or join the motion to dismiss. *See, e.g.*, ECF Nos. 204, 206.
Nevertheless, the following analysis applies to all defendants and therefore the RICO claims shall be dismissed against all defendants. Where "the issues concerning [a non-appearing defendant] are substantially the same as those concerning the other defendants, and . . . the party against whom the judgment of dismissal was entered, had notice and a full opportunity to make out his claim against" all the defendants, "*[s]ua sponte* dismissal of the complaint with respect to [the non-appearing defendants] is appropriate." *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 26 n.6 (2d Cir. 1990); *see also Cintron v. Shield,* No. 18-CV-1619 (RA), 2019 WL 4194429, at *3 (S.D.N.Y. Sept. 3, 2019) (*sua sponte* dismissal against non-moving defendant warranted where the "claims against [him] necessarily fail for the same reasons as the claims against [the moving defendants]").

3

To overcome a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to dismiss, the district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Lundy v. Catholic Health Sys. Of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). However, the Court need not construe legal conclusions dressed as facts in favor of the plaintiff. *See Iqbal*, 556 U.S. at 663.

2. Substantive RICO Claim

Hirsch alleges a violation of 18 U.S.C. § 1962(c). A claim under that provision has four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).[4] To plead a pattern of racketeering activity, the plaintiff must plead predicate acts that "amount to, or . . .

---

[4] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989); *see also Black v. Ganieva,* 619 F. Supp. 3d 309, 354 (S.D.N.Y. 2022), *aff'd*, No. 22-1524-CV, 2023 WL 2317173 (2d Cir. Mar. 2, 2023).

Hirsch alleges that the "predicate acts of racketeering," which he relies on to show a pattern, took place between March 8 and March 11, 2021. Compl. ¶¶ 277-95. The alleged activity ended when Hirsch gave his wife a Get on March 11, 2021. *Id.* at ¶ 291. Even assuming Hirsch's allegations about the predicate acts were sufficient — which they are likely not[5] — he fails to allege there was a "pattern" of racketeering

---

[5] To satisfy the pleading requirement that a defendant engaged in a "pattern of racketeering activity," a plaintiff must also allege that each defendant "personally committed" two or more predicate acts of "racketeering activity." *McLaughlin v. Anderson*, 962 F.2d 187, 192 (2d Cir. 1992); *see also* 18 U.S.C. § 1961(5). Hirsch does not specifically allege what RICO predicate acts he believes any particular defendant (other than the Edmond J. Safra Synagogue) has committed, let alone two per defendant. Compl. ¶ 277-95.

Hirsch seems to allege that every act discussed in his complaint constitutes a valid predicate, without explaining how. *Id.* ¶¶ 270, 273, 292. For example, to successfully allege wire fraud Hirsch would need to allege facts showing "(i) a scheme to defraud (ii) to get money or property (iii) furthered by the use of interstate mail or wires." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018). "A scheme to defraud is a plan to deprive a person of something of value by trick, deceit, chicane or overreaching," and requires "a material misrepresentation" made by the defendant. *Id.* Hirsch does not allege how the defendants intended to deceive him into giving up a Get — the only property he alleges he was deprived of, Compl. ¶ 285 — when the statements allegedly made were *about him*.

Putting aside the Court's doubts about whether the alleged acts are actually predicate acts, Hirsch's allegations are further insufficient given that his allegations show many defendants committed only one act. *See, e.g., id.* ¶¶ 121-22 (single Instagram post by one defendant); ¶¶ 123-25 (same); ¶¶ 143-46 (same); ¶¶ 151-57 (same); ¶¶ 199-202 (defendant engaging in a single protest); ¶¶ 203-08 (granting a Get, one time); ¶¶ 77-82 (giving students community service credit once for attending a protest).

5

activity because he does not allege "*continuing* racketeering activity." *H.J. Inc.*, 492 U.S. at 240.

To show this continuity, "[a] plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." *First Cap. Asset Mgmt.*, 385 F.3d at 180.

"To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Id.* By contrast, "[a] closed-ended pattern of racketeering activity involves predicate acts extending over a substantial period of time." *Id.* at 181. And "notably," the Second Circuit "has never found a closed-ended pattern where the predicate acts spanned fewer than two years." *Id.*; *see also Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 606 (2d Cir. 2019). Hirsch has not adequately pleaded either open-ended or close-ended continuity here.

Beginning with open-ended continuity, Hirsch fails to allege a "threat of continuing criminal activity beyond the period during which the predicate acts were performed." *First*

6

*Cap. Asset Mgmt.*, 385 F.3d at 180. He alleges that the extortionary scheme was directed at "extracting a Get" from him. Compl. ¶ 1. On his allegations, once the Get was extracted, there was nothing further to be done, as indicated by the very name of the alleged enterprise of the "free Elizabeth" campaign.[6] Hirsch was thus not at any risk of further criminal activity.

As for close-ended continuity, all of the predicate acts Hirsch alleges took place over a four-day span from March 8 to March 11, 2021. Compl. ¶¶ 278-95. This falls far short of the two-year "*minimum* duration necessary to find closed-ended continuity." *Grace Int'l Assembly of God*, 797 F. App'x at 605.

Moreover, and separate from the open-ended or closed-ended continuity requirements, "RICO caselaw disfavors finding continuity where the alleged scheme targeted few victims . . . and is inherently terminable." *Black*, 619 F. Supp. at 346; *see also id.* (collecting cases). Therefore, a plaintiff's "attempt[] to magnify the racketeering scheme by expanding the number of victims and predicate acts" when "in reality [it] is one scheme with one clear victim . . . is clearly insufficient to establish a pattern for the purposes of RICO." *Grace Int'l Assembly of God*, 797 Fed. App'x at 605. Based on Hirsch's own

---

[6] Hirsch alleged the enterprise "was the association in fact of each and every Defendant expressly referencing and/or associating with the free Elizabeth campaign, which was formed for purposes of *inter alia*, extracting a Get from Elliot M. Hirsch." Compl. ¶ 272.

description, he is clearly describing "one scheme with one clear victim" — him. *See id.* And the scheme was "inherently terminable." *Black*, 619 F. Supp. at 346. As alleged, the scheme's entire point was to force Hirsch to give his wife Elizabeth Kairey a Get. Once that goal was accomplished, there was nothing further for the Free Elizabeth campaign or anyone associated with it to do.

Hirsch's RICO claim must therefore be dismissed because he fails to adequately allege a pattern of racketeering activity.

### 3. Conspiracy to Violate RICO

In addition to his substantive RICO claim, Hirsch alleges a RICO conspiracy. *See* Compl. ¶¶ 4, 270-96. Other than two references to the RICO conspiracy statute, Hirsch does not allege anything specifically about this conspiracy. The relevant section of his complaint addresses the substantive RICO and RICO conspiracy claims together. *See id.* ¶¶ 270-96; *see also id.* at 50 (heading of "Ninth and Tenth Causes of Action – 18 USC 1964(c), 18 USC 1962(c) and 18 USC 1962(d)"). The Court therefore must read Hirsch's conspiracy claim to rely on the same allegations as his substantive claim.

Section 1962(d) of Title 18, as relevant here, establishes liability for conspiring to violate § 1962(c). Generally, where a Plaintiff "d[oes] not adequately allege a

8

substantive violation of RICO," his RICO conspiracy claim is also "properly dismissed." *First Cap. Asset Mgmt.*, 385 F.3d at 182. Of particular relevance here, "under any prong of § 1962," including § 1962(d), "a plaintiff in a civil RICO suit must establish a pattern of racketeering activity." *Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178, 183 (2d. Cir 2008) (affirming dismissal of a RICO conspiracy claim because there was no "pattern of racketeering activity" sufficient to state a substantive RICO claim). This is because to establish a RICO conspiracy in violation of § 1962(d), a civil plaintiff must demonstrate that the alleged conspirators "agreed to participate in the affairs of the enterprise through a pattern of racketeering activity." *United States v. Yannotti*, 541 F.3d 112, 121 (2d Cir. 2008). "To establish this pattern, the [plaintiff] need not prove that the [conspirator] himself agreed that he would commit two or more predicate acts," but does need to show the conspirator agreed to "engage in a jointly undertaken pattern of racketeering activities." *Id.* at 121-22. Thus, where "plaintiff has failed to come forward with evidence sufficient to raise a question of fact as to whether a pattern of racketeering activity existed, his RICO conspiracy claim also must be dismissed." *Dolan v. Fairbanks Capital Corp.*, 930 F. Supp. 2d 396, 412 (E.D.N.Y. 2013).

Hirsch's inability to articulate a pattern of racketeering activity — actual or contemplated — is therefore also fatal to his RICO conspiracy claim. Again, Hirsch's RICO conspiracy claim is entirely derivative of his substantive claim. He does not allege some separate pattern of racketeering activity (agreed-upon but not executed) for the conspiracy claim. Hirsch's RICO conspiracy claim therefore must be dismissed.

4. Leave to Amend

Hirsch may not amend his RICO claims, which shall be dismissed with prejudice. He has already been given leave to amend these claims twice and has still failed to state a valid RICO claim. He is not due a third bite at the apple.

Hirsch initially brought this case in the federal district court for the District of New Jersey, where it was in front of the Honorable Freda J. Wolfson. Before the case was transferred to this Court, Judge Wolfson dismissed Hirsch's RICO claims for failure to allege a violation of RICO because "a pattern of racketeering activity requires at least two acts of racketeering activity within a ten-year period" and Hirsch "allege[d] only one act of racketeering activity." ECF No. 34 at 5 (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 363, 3rd Cir. 2010)).

10

Nevertheless, Judge Wolfson dismissed without prejudice, allowing Hirsch to amend. *Id.; see also* ECF No. 37. After the case was transferred to this Court, I dismissed Hirsch's RICO claims for a second time, for failure to comply with Rule 8. *See* ECF No. 152. This Court then afforded plaintiff "one more bite at this apple" to attempt to "plausibly allege any RICO claims." ECF No. 163 at 3. But the Court warned then that "any future dismissal of these claims may be with prejudice." *Id.*[7]

Hirsch has already been given two attempts to plead RICO claims, and he has long been "on notice of the deficiencies claimed by the defendant." *See Truman v. Brown*, 434 F. Supp. 100, 124 (S.D.N.Y 2020); *see also* ECF No. 163 at 3. The RICO claims are dismissed <u>with</u> prejudice.

**B. Jurisdiction Over State Claims**

Because Hirsch's federal claims are dismissed, the Court no longer has federal-question jurisdiction under § 1331. The Court must therefore assess whether there remains any basis to exercise jurisdiction over Hirsch's state law claims. A

---

[7] Indeed, as district courts in this circuit have noted, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation" as there are many "putative civil RICO claims that are nothing more than sheep masquerading in wolves' clothing." *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, No. 12-cv-8205, 2013 WL 3943267 at *5 (S.D.N.Y. July 31, 2013); *see also Chester Park View, LLC v. Schlesinger,* No. 23-CV-5432, 2024 WL 2785140, at *6 (S.D.N.Y. May 29, 2024) (collecting cases demonstrating that it is "the rare complaint that actually states a claim for civil RICO").

11

"district court may not proceed to the merits without first determining whether it has subject-matter jurisdiction." *Platinum-Montaur Life Scis., LLC v. Navidea Biopharms*, Inc., 943 F.3d 613, 619 (2d Cir. 2019). And "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Having dismissed the federal claims at this early stage, the Court will not exercise supplemental over the remaining state claims. *See* 28 U.S.C. § 1367 (district court "may decline" to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"); *Royal Canin U.S.A. Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025) (in such circumstances, "the court may (and indeed, ordinarily should) kick the case to state court").

Thus, the state claims will proceed here only if the Court has diversity jurisdiction under 28 U.S.C. § 1332. Hirsch has not, however, properly invoked this Court's jurisdiction in diversity — at least not yet. Thus, for the reasons that follow, Hirsch is ordered to show cause why the Court should not dismiss the remainder of his claims on jurisdictional grounds. *See generally Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82 (2d Cir. 2018).

Hirsch relies on Section 1332(a), which provides for jurisdiction over cases between "Citizens of different

12

States." *See* Compl. ¶ 4.  The section requires complete diversity, which means "all plaintiffs must be citizens of states diverse from those of all defendants."  *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir. 2014).  "In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action."  *Exxon Mobil Corp. v. Allapattah Services Inc.*, 545 U.S. 546, 553 (2005).

As pleaded, the complaint actually suggested the *absence* of complete diversity (notwithstanding Hirsch's invocation of Section 1332).  Hirsch says he "resides" in New Jersey, Compl. ¶ 6, and names three Jersey defendants — one who "does permanent business" in the state, and two who reside there, *id.* ¶ 7.  But Hirsch named these Jersey residents (and the permanent business-doer) only in his *federal* claims.  Now that those claims have been dismissed with prejudice, their presence in the complaint will not impede diversity jurisdiction.  The Second Circuit held, in *Wright v. Musanti*, 887 F.3d 577 (2d Cir. 2018), that in cases that originally invoke the district court's federal-question jurisdiction, the question of diversity need not be assessed until the federal claims are dismissed.  *Id.* at 584.  That is, the "standard rule

13

that diversity jurisdiction only exists where diversity is present at the time of the original complaint does not apply" when the original complaint was supported by a federal question. *Id.* at 584-85.

Here, though, diversity cannot properly be assessed from the complaint. To invoke diversity jurisdiction, the plaintiff must allege the citizenship of all parties. *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53-54 (2d Cir. 2019). "An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Id.* Alleging "residence or place of employment alone [is] insufficient to establish domicile for jurisdictional purposes." *Lue v. JPMorgan Chase & Co.*, No. 21-892, 2022 WL 1146219, at *1 (2d Cir. Apr. 19, 2022); *see also Franceskin v. Credit Suisse*, 214 F.3d 253, 255-56 (2d Cir. 2000) (collecting cases).

Hirsch alleges that he "resides at 7 Saxony Drive, Oakhurst, New Jersey." Compl. ¶ 6. He does not allege his citizenship — or, for that matter, any of the defendants'. *Id.* ¶ 7. Instead, he alleges, variously, the residence or place of business of individual defendants (sometimes in the alternative). *Id.*[8] For the entity defendants, he alleges the state of incorporation and / or location — but not always both

---

[8] For example, he alleges that "Defendant, Eve Scaba[,] resides and / or has a place of business at [the listed Brooklyn address]." Compl. ¶ 7.

14

state of incorporation and principal place of business, as is required. *Id.*[9] These allegations are thus insufficient to establish the citizenship of each defendant and therefore insufficient to invoke the Court's subject matter jurisdiction. *See Lue*, 2022 WL 1146219, at *1. Hirsch will therefore be directed to show cause why the state-law claims should not be dismissed.

### III. Conclusion

Plaintiff's federal RICO and RICO-conspiracy claims are dismissed with prejudice. Plaintiff is ordered to show cause, within twenty-one days of this order, why his state law claims should not be dismissed on jurisdictional grounds.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:   March 25, 2025
         Brooklyn, New York

---

[9] For example, he alleges that "Defendant Yeshiva of Flatbush Joel Braverman High School is located at 1609 Ave J, Brooklyn, New York." Compl. ¶ 7.